IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL C. O'BRIEN,

                Petitioner,

    v.

LIZZIE TEGELS, Warden,
Jackson Correctional Institution,

                Respondent.

OPINION & ORDER

14-cv-868-slc

---

Petitioner Michael C. O'Brien is incarcerated by the Wisconsin Department of Corrections at the Jackson Correctional Institution.  O'Brien seeks a writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state judgment of conviction from the Outagamie County Circuit Court.  On April 5, 2016, both parties consented to magistrate judge jurisdiction and this case was reassigned to me the same day.  (Dkt. 27.)  The respondent has filed an answer and both parties have submitted briefing.  After the briefing was complete, O'Brien also filed a Motion for the Appointment of Counsel.  (Dkt. 22.)  Because the record establishes that O'Brien is not entitled to the relief sought, his petition and motion must both be denied.

BACKGROUND

On July 1, 2010, O'Brien entered pleas of no contest to, and was found guilty of, an assortment of offenses outlined in Outagamie County Case Nos. 09CF384, 09CF745, and 10CF83 (hereafter referred to by the last 2 or 3 digits of each case number).  In Case 384, O'Brien was convicted of: (1) possession of an electric weapon; (2) possession of cocaine; (3) resisting or obstructing an officer; and (4) misdemeanor bail jumping (four counts).  In Case 745, O'Brien was convicted of felony bail jumping.  In Case 83, O'Brien was convicted of

operating while under the influence, 5th or 6th offense.  Thereafter, O'Brien's attorney sought

and was granted leave to withdraw, followed by O'Brien's attempt, through his second attorney,

to withdraw his guilty pleas.  Here is the Wisconsin Court of Appeals' summary of the timeline:

> O'Brien submitted a signed plea questionnaire/waiver of rights
> form and the court engaged him in a colloquy regarding his desire
> to plea to the charges.  Ultimately, O'Brien pled no contest to all
> charges except operating with a prohibited alcohol concentration,
> and the court found him guilty.  The court then ordered a
> presentence investigation (PSI) report.  O'Brien advised the court
> that he was familiar with PSI reports, and he had previously been
> the subject of a PSI report.
>
> At the scheduled sentencing hearing, O'Brien's trial counsel
> successfully moved to withdraw, citing a conflict based on the PSI
> report.  The court appointed O'Brien successor counsel, who
> ultimately moved to withdraw O'Brien's pleas.

*State v. O'Brien*, 2013 WI App 30, ¶¶ 3-4, 346 Wis. 2d 281, 827 N.W.2d 930.

At the plea withdrawal hearing, O'Brien submitted a letter from his former trial counsel,

Dawn Leemon, in which she stated:

> I have received and read the PSI report, and am extremely disturbed at some of
> its contents.  I am utterly at a loss to understand why you would fail to tell me
> that you have prior federal charges stemming from an alcohol related accident
> where two people were killed.  That is information that an attorney must have if
> she is to advise you appropriately, and the advice I gave you would have been
> different had I been aware of that conviction.

(Dkt. 9-2, at 14.)

O'Brien explained in his testimony that he knew about his prior record, he *assumed* that

Leemon also knew everything in his criminal record, and that when he met with her, she had

told him that his record did not look bad.  (Hrg. Tr., dkt. #11, at 7-9.)  Leemon did not testify

at the plea withdrawal hearing because O'Brien's new lawyer could not find her.  (*Id.* at 11.)

2

O'Brien asserted that, as a result of Leemon's statements and her subsequent withdrawal from his case, O'Brien wanted advice about whether he should go to trial.  (*Id.*)

The circuit court denied O'Brien's request to withdraw his guilty pleas.  The court, noted first that the pleas were voluntary and that O'Brien was fully aware that the court was the ultimate decision-maker of the appropriate sentence, regardless of the State's request or the PSI's recommendations.  The court went on to reject the notion that Leemon's ignorance of his entire criminal record warranted withdrawal of the pleas:

> Mr. O'Brien knew perfectly well what his prior record was.  He knew perfectly well that he had spent 41 months of a Federal prison sentence back in 1999 for homicide by negligent use of a motor vehicle.  He knew his entire record, and he can't come into court now and after he's seen the presentence report recommendation and pull the rug out beneath those pleas.  That does prejudice the State.  It would be a serious waste of judicial resources because this defendant is not entitled to a trial.  He has waived that entirely.  He waived It knowing full well what the results might be regardless of what his attorney may have felt about the fact that she was not apprised by him of his prior record.
>
> It is clear from the case law, *Leitner* in particular, that holding that a conviction will not show up in a presentence report and then having it show up is not a fair and just reason.  Clearly from our case law an unfavorable recommendation in a presentence report is not a fair and just reason.  Furthermore, the Court is entitled to consider the fact that the defendant waited until he saw a presentence report to ask to withdraw his pleas.  There are no grounds here today.  The defendant has not met his burden of proof to show that there is a fair and just reason to withdraw his pleas.

*Id.* (dkt. 11) at 18.

On direct appeal, O'Brien argued that the circuit court should have allowed him to withdraw his pleas of no contest in Cases 384, 745 and 83, because O'Brien had filed his

motion before sentence was imposed and because Attorney Leemon had given inadequate advice due to her ignorance of O'Brien's previous federal conviction.

On January 23, 2013, the Wisconsin Court of Appeals affirmed the circuit court's decision in an unpublished opinion. *See O'Brien*, 2013 WI App 30, 346 Wis. 2d 281, 827 N.W.2d 930. The court rejected O'Brien's appeal on three grounds:

> First, to the extent O'Brien suggests he should be permitted to withdraw his pleas because his trial counsel was ineffective for offering advice without knowledge of his federal conviction, O'Brien does not develop any argument regarding a claim of ineffective assistance of counsel. We will not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646 492 N.W.2d 633 (Ct. App. 1992).

> Second, although counsel gave advice she stated she would not have otherwise given had she known about O'Brien's federal homicide conviction, the circuit court discounted counsel's statement, finding that O'Brien both knew of and failed to tell his attorney about the federal homicide conviction before entering his pleas. The court also found that, regardless of what O'Brien's attorney believed, O'Brien knew "full well what the results might be" at sentencing. O'Brien has not established that his purported reliance on counsel's advice, which was based on his own failure to be forthright with his counsel, amounts to a fair and just reason for plea withdrawal.

> Third, we disagree with O'Brien that the circuit court erred by finding his motivation to withdraw his pleas was based on the unfavorable PSI report. In *State v. Leitner*, 2001 WI App ¶ 33, 247 Wis. 2d 195, 633 N.W.2d 107, we recognized that, when considering a presentence plea withdrawal motion, a circuit court is entitled to consider the fact that [the defendant] waited until he saw the content of his presentence report before seeking plea withdrawal and infer from that fact, and the surrounding circumstances, that [the defendant's] true reason for seeking withdrawal was his fear of a harsh sentence due to the presentence report.
>
> * * *
>
> Although O'Brien correctly points out that he had not yet seen the PSI report when counsel sent him the letter or moved to withdraw, the record indicates that, by the time O'Brien moved to withdraw his pleas, approximately six months later, he had seen the PSI

report.  Specifically, one month before his plea withdrawal motion was filed, O'Brien's successor counsel advised the court that the matter "was rescheduled in part because once the PSI came back there were some issues concerning what we believe to be the accuracy of some of the priors listed in the description of those events."  The record supports the circuit court's determination that O'Brien viewed the PSI report and was motivated to withdraw his pleas based on the unfavorable report.  We agree with the circuit court that "hoping that a conviction will not show up on a presentence report and then having it show up is not a fair and just reason" for plea withdrawal.  This is especially true considering O'Brien advised the court at the plea hearing that he was familiar with PSI reports and had been the subject of such a report in the past.

*O'Brien*, 2013 WI App 30, ¶¶ 11-14, 346 Wis. 2d 281, 827 N.W.2d 930.

On November 13, 2014, the Wisconsin Supreme Court summarily denied O'Brien's petition for review, *see State v. O'Brien*, 360 Wis.2d 171 (2014).

## OPINION

### I.    Habeas Corpus Standard of Review

To obtain a writ of habeas corpus, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c), 2254(a).  In deciding whether a habeas corpus petition merits relief, a reviewing court looks to the "last reasoned state-court opinion" to address the petitioner's claims.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *see also Ford v. Wilson*, 747 F.3d 944, 949 (7th Cir. 2014) (inquiry focuses entirely on what occurred in state court, specifically the decision of the last state court to rule on the merits of petitioner's claim.).  In O'Brien's case, that would be the Wisconsin Court of Appeals, so it is up to O'Brien to establish that this court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

5

Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).

A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.   *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).   A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case.   *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir.), *cert. denied*, 134 S. Ct. 136 (2013).   In this context, an "unreasonable application" of federal law means "objectively unreasonable, not merely wrong; even 'clear error' will not suffice."   *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).

In short, when using § 2254(d)(1) to review a state court decision, this court must be highly deferential and must give the benefit of the doubt to the state court, rather than to the petitioner.   *Burt v. Titlow*, 134 S. Ct. 10, 13, 15 (2013).   Habeas relief is authorized only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."   *Harrington v. Richter*, 562 U.S. 86, 102 (2011).   To prevail, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 562 U.S. at 103.   In addition to the "formidable barrier" posed by this standard, *Titlow*, 134 S. Ct. at 16, the petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).   Alternatively, a petitioner must show that

6

the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2).

## II.     Denial of Plea Withdrawal

O'Brien's only stated ground for relief is that the ineffective assistance he received from his trial counsel should have permitted him to withdraw his guilty plea. Although it appears that O'Brien is arguing only that his trial attorney was ineffective, the State responded by arguing only that the Court of Appeals correctly affirmed the circuit court's refusal to permit him to withdraw his guilty plea. It is unclear why the parties are talking past each other, but it doesn't matter because O'Brien loses no matter what. I address the two arguments in turn:

### A.     Ineffective Assistance of Counsel

O'Brien did not raise an ineffective assistance of counsel claim during his appeal, so the Wisconsin Court of Appeals would not consider it.[1] Because neither the Wisconsin Court of Appeals nor the Wisconsin Supreme Court addressed O'Brien's ineffective assistance of counsel claim, such a claim would normally be barred by procedural default due to failure to exhaust his state court remedies. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40

---

[1]   O'Brien claims for the first time in a response brief–and without support–that he was *unable* to bring this argument on appeal because his appellate attorney would not raise it and did not communicate properly with him. (*See* dkt. #13.) This claim suggests that O'Brien also would like to argue that his appellate attorney was ineffective. O'Brien's failure to present this ground for relief in his petition, by itself, is enough to bar consideration of this claim. But even if it were properly raised, O'Brien's unsupported argument falls woefully short of establishing that his appellate attorney somehow was deficient. This is because the Wisconsin Court of Appeals denied his appeal on two additional grounds that had nothing to do with ineffective assistance of counsel. As a result, O'Brien has not shown and cannot show that his appellate attorney's failure to pursue an argument that his trial counsel was ineffective affected the outcome of his appeal.

(1999) (to satisfy the requirement found in § 2254(b), "a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement."). This being so, procedural default is an affirmative defense that the respondent must assert. *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004). The State has not asserted it here, so it has waived it. It doesn't matter: O'Brien's ineffective assistance of counsel claim fails on the merits.

*Strickland v. Washington*, 466 U.S. 668 (1984) sets forth the test for analyzing this claim: O'Brien must demonstrate both constitutionally deficient performance by his lawyer *and* actual prejudice resulting from this deficiency. *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

To demonstrate deficient performance, O'Brien must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial." *Id*. at 687. "This means identifying acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011). To show actual prejudice, O'Brien must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

O'Brien contends that if Attorney Leemon had thoroughly searched his criminal history, then she would have found the negligent homicide conviction, her recommendation likely would

have changed, and O'Brien would not have pled guilty.  This contention is simply speculation seasoned with wishful thinking.  As a common sense starting point,  O'Brien does not explain why he did not disclose his negligent homicide conviction to Leemon.  *He* knew about it–why would he leave Leemon ignorant adrift on this fact that he now deems pivotal?  O'Brien acknowledges that he never flagged for Leemon his negligent homicide conviction.  Even so, says O'Brien, it's *Leemon's* fault that she didn't factor this serious conviction into her advice to him about what to do.  O'Brien's position, in essence, is that Leemon screwed up by relying on him to share with her an obviously relevant prior conviction for negligent homicide that clearly was important to Leemon's ability to advise O'Brien how to proceed.

O'Brien should not be surprised to learn that where a defendant fails to provide his attorney with material information, he may be bound by that failure if he later claims deficient performance claim stemming from the attorney's failure to have such information.  This is because an attorney's "actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."  *Strickland*, 466 U.S. at 691; *see also United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 957-58 (7th Cir. 1986) (no deficient performance where defendant failed to inform his attorney of potential witness names and addresses); *United States ex rel. Trujillo v. Warden Gramley*, No. 96 C 7894, 1996 WL 722081, at *9 (N.D. Ill. Dec. 5, 1996) (counsel's failure to call witnesses because defendant did not inform his counsel of their existence does not constitute ineffective assistance of counsel). In short, O'Brien has not established deficient performance by his attorney.

That's enough to dispense with this claim, but O'Brien also has failed to establish prejudice, that is, that but for Attorney Leemon's failure to provide more accurate advice about how to respond to the charges, there was a reasonable probability that the result would have

been different.  *United States v. McCleese*, 75 F.3d 1174, 1179 (7th Cir. 1996).  O'Brien doesn't actually say this, but he implies that he would not have pled guilty, or that he would have accepted the State's proposed agreement, if his attorney realized the effect O'Brien's negligent homicide conviction would have on a sentence following a blind plea.  This is not enough to establish prejudice.  O'Brien has failed to provide any evidence to support this implication.  This dooms his claim.  *Id.* (rejecting self-serving testimony by defendant that he would not have accepted a plea agreement if he had not received ineffective assistance of counsel).

### B.        Withdrawal of Guilty Plea

O'Brien claims that the state courts should have allowed him to withdraw his guilty pleas. Although he couches it in terms of ineffective assistance of counsel, a generous reading of O'Brien's petition suggests that he also disagrees with the Court of Appeals' affirmance of the trial court's decision to deny O'Brien's request to withdraw his guilty plea.  This claim is not a ground for habeas relief because the Court of Appeals decision is not contrary to clearly established precedent or based on an unreasonable factual determination.

In *State v. Jenkens*, 2007 WI 96, ¶ 38, 303 Wis.2d 157, 736 N.W.2d 24, the Wisconsin Supreme Court acknowledged that a court may permit a defendant to withdraw his plea "for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea."  The United States Supreme Court has applied the same standard.  *United States v. Hyde*, 520 U.S. 670, 676-77 (1997) (to withdraw a guilty plea after the court has accepted it, a defendant must show a "fair and just" reason to do so).  To establish a fair and just reason, "the defendant must proffer a fair and just reason that the circuit court finds credible." *Jenkens*, 2007 WI 96, ¶ 43, 303 Wis.2d 157, 736 N.W.2d at 36; *see United States v. Hodges*, 259

F.3d 655, 661 (7th Cir. 2001) (holding that a defendant must provide some credible evidence when attempting to withdraw a plea).

Here, In affirming the circuit court, the Court of Appeals properly applied the standard in *Jenkens*. The court specifically held, in addition to rejecting the undeveloped ineffective assistance of counsel argument, that: (1) O'Brien was well aware of the consequences of his failure to be forthright with his attorney about his criminal history; and (2) the timing of O'Brien's motion to withdraw his plea showed that it was motivated by the unexpectedly harsh sentence recommended in the PSI. *O'Brien*, 2013 WI App 30, ¶¶ 11-14, 346 Wis. 2d 281, 827 N.W.2d 930. The court's decision relied on applicable authority with respect to plea withdrawal. More importantly, it was consistent with applicable law because it properly applied the "fair and just reason" standard, which permits the court to deny a request to withdraw when the defendant's reasons for withdrawal lack credibility.

O'Brien does not address this standard or establish that the court's decision was incorrect. Instead, he simply blames his attorney's failure to learn the extent of his criminal history in providing him advice about how to proceed. I already have rejected this ground for relief, so O'Brien has nothing left to establish that the Court of Appeals' decision was inconsistent with established law.

Likewise, O'Brien has failed to show that the court's rejection of his withdrawal request was based on factual errors. Instead, he attempts to attack the content of his PSI, stating that it contains "false information, incorrect information that was used to given petitioner a harsher sentence," and that the alcohol-related offense did not actually involve alcohol. (Dkt. 13, at 3.) Yet O'Brien fails to explain how these alleged errors affected the Court of Appeals' decision, much less provide any evidence supporting his allegations of inaccuracies.

11

In sum, O'Brien has not established that his trial counsel was ineffective, or that the Court of Appeals' decision was contrary to established precedent or included an unreasonable application of the fact.  Accordingly, O'Brien is not entitled to relief under § 2254.

### III.     Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to O'Brien.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case.  For the reasons already stated, the court concludes that O'Brien has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court.  Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

**IV.      Motion for the Appointment of Counsel**

After the parties had submitted their briefs, O'Brien asked the court to assist in recruiting a lawyer for him because he lacks knowledge of federal law and does not have sufficient resources to hire any attorney.  I am denying this motion.

Before a district court can consider such motions, it must first find that the plaintiff has made reasonable efforts to find a lawyer on his own and that were unsuccessful or that he was prevented from making such efforts.  *Jackson v. County of McLean*, 953 F.2d 1070 (7th Cir. 1992). To prove that he has made reasonable efforts to find a lawyer, plaintiff must submit letters from at least three lawyers who he asked to represent him in this case and who turned him down.  In his motion, plaintiff has not indicated that he has attempted to retain any attorneys who have rejected his request for representation, and so his motion fails because he has not met the initial requirement of showing reasonable efforts to find a lawyer.

Even if O'Brien had complied with *Jackson*, he has not shown that appointment of counsel is necessary in this case.  Ideally, every deserving litigant would be represented by a lawyer in this court, but regrettably, the pro se litigants who file lawsuits in this district vastly outnumber the lawyers who are willing and able to provide pro bono representation.  For this reason, assistance in recruiting counsel is appropriate only when the plaintiff demonstrates that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it.  *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). In this case, O'Brien has shown himself capable of handling the legal and factual issues of his petition.  His petition was clearly written, attached the relevant materials and raised his claims for relief in a manner that permitted the court to review the record of his state criminal proceedings and, construing his claims generously, evaluate whether his petition had merit.

Further, as the analysis above demonstrates, given the high bar that § 2254 imposes before a state prisoner may obtain habeas relief in federal court, there is nothing that an attorney could have done for O'Brien in this case that would have changed the outcome. Accordingly, in this particular situation, the assistance of an attorney was not necessary for O'Brien to be able to clearly present his claim before the court.

ORDER

IT IS ORDERED THAT:

1. The federal habeas corpus petition filed by Petitioner Michael C. O'Brien is DENIED and this case is DISMISSED with prejudice.

2. A certificate of appealability is DENIED. If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. 22.

3. Petitioner's Motion for the Appointment of Counsel (dkt. 22) is DENIED.

Entered this 7th day of April, 2016.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

14